UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

ROBERT ACEVEDO                                    CV

                              Plaintiff,

        v.                                         COMPLAINT

DLR PROPERTIES, LLC,  TGI FRIDAYS                  JURY TRIAL REQUESTED
FRANCHISOR, LLC AND 211 WEST 34
OPERATING, LLC

                              Defendants.

-------------------------------------------------------------x

## COMPLAINT

        Plaintiff Robert Acevedo (hereafter referred to as "Plaintiff"), by counsel, Parker

Hanski LLC, as and for the Complaint in this action against Defendants DLR Properties,

LLC, TGI Fridays Franchisor, LLC and 211 West 34 Operating, LLC (together referred

to as "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

        1.      This lawsuit opposes pervasive, ongoing, and inexcusable disability

discrimination by the Defendants.  In this action, Plaintiff seeks declaratory, injunctive,

and equitable relief, as well as monetary damages and attorney's fees, costs, and expenses

to redress Defendants' unlawful disability discrimination against Plaintiff, in violation of

Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and

its implementing regulations, the New York State Human Rights Law ("NYSHRL"),

Article 15 of the New York State Executive Law ("Executive Law"), the New York State

Civil Rights Law, § 40 *et. seq.*, and the New York City Human Rights Law

("NYCHRL"), Title 8 of the Administrative Code of the City of New York

("Administrative Code").  As explained more fully below, Defendants own, lease,

operate, franchise and control a place of public accommodation that violates the above-mentioned laws.  Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.      These Defendants made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught.  In so doing, Defendants made a calculated, but unlawful, decision that disabled customers are not worthy.  The day has come for Defendants to accept responsibility.  This action seeks to right that wrong.  Plaintiff seeks to have Defendants' place of public accommodation made fully accessible so that Plaintiff can finally enjoy the full and equal opportunity that Defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.  This Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination alleged herein occurred in this district and Defendants' place of public accommodation that is the subject of this action is located in this district.

## PARTIES

5.    At all times relevant to this action, Plaintiff Robert Acevedo has been and remains a resident of the State and City of New York.

6.    At all times relevant to this action, Plaintiff Robert Acevedo has been and remains a wheelchair user.  Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

7.    At all relevant times, defendants DLR Properties, LLC, TGI Fridays Franchisor, LLC and 211 West 34 Operating, LLC own, lease, lease to franchise, operate and/or control a public accommodation doing business as a TGI Fridays restaurant.

8.    Defendant DLR Properties, LLC owns the property located at 211 West 34th Street in New York County, New York (hereinafter referred to as "211 West 34th Street").

9.    Defendant TGI Fridays Franchisor, LLC, as franchisor, franchises a TGI Fridays to 211 West 34 Operating, LLC as franchisee pursuant to a franchise agreement.

10.    At all relevant times, defendant 211 West 34 Operating, LLC operates and/or leases property located at 211 West 34th Street from the defendant DLR Properties, LLC at which it operates a TGI Fridays restaurant (hereinafter referred to as the "TGIF premises").

11.    Upon information and belief, DLR Properties, LLC and 211 West 34 Operating, LLC have a written lease agreement.

12.    Upon information and belief, Defendants DLR Properties, LLC and 211 West 34 Operating, LLC are related companies under common control.

13.    Each defendant is licensed to and does business in New York State.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14.     Each of the Defendants is a public accommodation as they own, lease, lease to, control, franchise or operate a place of public accommodation, the TGIF premises located at 211 West 34th Street, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102).

15.     The TGIF premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code (§ 8-102) as it is a facility operated by a private entity and its operations affect commerce.

16.     Numerous architectural barriers exist at the TGIF premises that prevent and/or restrict access to Plaintiff, a person with a disability, which include, but are not limited to, architectural barriers at the paths of travel.

17.     Upon information and belief, at various times after January 1992, alterations were made to 211 West 34th Street, including areas adjacent and/or attached to 211 West 34th Street.

18.     Upon information and belief, at various times after January 1992, alterations were made to the TGIF premises, and to areas of 211 West 34th Street related to the TGIF premises.

19.     Upon information and belief, in 2013, Defendants created the TGIF premises at 211 West 34th Street.

20.     Upon information and belief, the use and occupancy of 211 West 34th Street was changed when the TGIF premises were created.

21.     Upon information and belief, in 2013, to create the TGIF premises, Defendants changed the use and occupancy of 211 West 34th Street from storage, stores and office use, occupancy classifications "COM" (Commercial Buildings) to an eating and drinking establishment, occupancy classification "A-2" (Assembly: Eating and Drinking).

22.     To change 211 West 34th Street to a new eating and drinking establishment, construction work included the creation of a new storefront, and installation of kitchen equipment, as well as the installation of new mechanical and plumbing systems and stairwells.

23.     Because the occupancy classification of 211 West 34th Street was changed, 211 West 34th Street, including the TGIF premises, must, at a bare minimum, comply with the provisions of the 1968 New York City Building Code, Administrative Code, Title 27 ("1968 BC"), including the 1968 BC Reference Standard ANSI 117.1-1986 ("1968 Ref Std").  See Administrative Code of the City of New York § 27-123.1(b) ("The provisions of [Local Law 58 of 1987] shall apply to an entire existing building, as if hereafter erected, when there is a change in occupancy classification of the building.")

24.     Because the TGIF premises' occupancy type was changed, the provisions of the 1968 BC, including the 1968 Ref Std applicable to newly constructed buildings apply to the TGIF premises.  ("The provisions of [Local Law 58 of 1987] shall apply to a space in a building, when there is a change in the occupancy type thereof or in how such space is used.")

25.     Because there was a change in how the space the TGIF Premises occupies is used, the provisions of the 1968 BC, including the 1968 Ref Std applicable to newly constructed building apply to the TGIF Premises.

26.     The TGIF premises has three (3) public levels.

27.     The first (ground) level (Floor 001) is the ground/street level and contains seating, a bar and restrooms.  The second level (Floor 002) and third level (Floor 003) contain tables for dining, and views of the activated street life below.  There is also a cellar level.

28.     Defendants provide nondisabled customers the opportunity to dine on the first, second or third levels of the TGIF premises.

29.     The TGIF premises provides nondisabled customers with a vertical staircase to travel to and from all three public levels.

30.     In contrast, Defendants do not provide mobility impaired customers with an accessible means of vertical access to the second or third level of the TGIF premises.

31.     Mobility impaired customers have no accessible means of vertical access to the second or third level of the TGIF premises.

32.     Defendants only provide mobility impaired customers with a single option for dining - the ground level.

33.     Defendants relegate Plaintiff to the most crowded part of the TGIF premises, the ground level, and only to a single location on the ground level, a seating location near the restroom.

34.     Defendants deny Plaintiff access to the second and third levels of the TGIF premises.

35.     By denying Plaintiff access to the second and third levels of the TGIF premises, Plaintiff must wait for a table when the first level is at capacity while non-disabled customers are promptly directed to the second and third levels.

36.     The TGIF premises discriminates against mobility impaired customers by providing less and unequal access to its premises then what it provides to nondisabled customers.

37.     The TGIF premises discriminates against mobility impaired customers by limiting and reducing the dining options as compared to the options available to nondisabled customers.

38.     When the first level is full, non-disabled customers can promptly be seated at unoccupied tables on the second and third levels.

39.     Unlike non-disabled customers, mobility impaired customers, like Plaintiff, are forced to wait for an empty table at the ground level and cannot be promptly seated at unoccupied tables on the second or third levels.

40.     The TGIF premises discriminates against mobility impaired customers by segregating Plaintiff on the first level.

41.     It is possible to provide wheelchair accessible vertical access between the first, second and third levels of the TGIF premises.

42.     Before the TGIF premises were created, 211 West 34th Street had a passenger elevator serving all three levels of the space currently comprising the TGIF premises.

43.     This passenger elevator serving all three levels of the space currently comprising the TGIF premises was removed and never replaced.

44.     Because the building previously had an elevator that provided access to the second and third levels, Defendants were obligated to provide elevator access to each level when they constructed the TGIF premises.

45.     The removal of this passenger elevator without replacement violated the anti-discrimination laws cited herein.

46.     Since the removal of this passenger elevator, Defendants provided no wheelchair accessible vertical access from the ground level to the second or third level of the TGIF premises.

47.     Defendants made a discriminatory decision not to provide mobility impaired customers with access to all public levels of the TGIF premises when they removed the passenger elevator in 2014.

48.     Defendants could have provided or maintained a passenger elevator or a vertical lift from the first level to the second and third levels of the TGIF premises.

49.     211 West 34th Street has more than three stories.

50.     The total floor area of 211 West 34th Street is more than 2,500 square feet.

51.     The total floor area of the TGIF premises is more than 2,500 square feet.

52.     Defendants can financially afford to provide wheelchair accessible vertical access to the second and third levels of the TGIF premises.

53.     It would not impose undue hardship on Defendants to provide wheelchair accessible vertical access to the second and third levels of the TGIF premises.

54.     Defendants have constructed and/or made alterations to the TGIF premises, and to areas of 211 West 34th Street related to the TGIF premises.

55.     Plaintiff desired and continues to desire to access the entire TGIF premises but suffered hardship and emotional distress due to architectural barriers.

56.     The services, features, elements and spaces of Defendants' place of public accommodation were and are not readily accessible to, or usable by Plaintiff.

57.     Because of Defendants' failure to comply with the law, Plaintiff was and continues to be unable to enjoy safe, equal and complete access to Defendants' place of public accommodation.

58.     Defendants' failure to make their place of public accommodation accessible denied and continues to deny Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

59.     Plaintiff has a realistic, credible and continuing threat of discrimination from the Defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within Defendants' place of public accommodation continue to exist and deter Plaintiff.

60.     Plaintiff is in the midtown area where Defendants' place of public accommodation is located approximately every week, and is deterred from patronizing the TGIF premises because of the accessibility barriers present at the TGIF premises and at 211 West 34th Street.  Plaintiff intends to patronize the Defendants' place of public accommodation after it becomes fully accessible.

61.     In addition, the services, features, elements and spaces of the TGIF premises are not readily accessible to, or usable by Plaintiff as required by the 1991 ADA Standards for Accessible Design codified in 28 C.F.R. Part 36, Appendix D (hereinafter referred to as the "1991 Standards" or the "1991 ADA") or in the 2010 ADA Standards

for Accessible Design codified in 36 CFR part 1191 Appendices B and D and 28 CFR part 36 subpart D  (hereinafter referred to as the "2010 Standards" or the "2010 ADA").

62.     Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, Plaintiff was and has been unable to enjoy safe, equal, and complete access to all of the areas of the TGIF premises that are open and available to the public.

63.     Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the 1968 BC, including the 1968 Ref Std, the 2008 New York City Building Code ("2008 BC") including the 2008 BC Reference Standard ICC/ANSI 117.1 2003 ("2008 Ref Std") and the 2014 New York City Building Code ("2014 BC") including the 2014 BC Reference Standard ICC/ANSI 117.1 2009 ("2014 Ref Std").

64.     In addition to the barriers described above, barriers to access that Plaintiff encountered and/or which deter Plaintiff from patronizing the TGIF premises as well as architectural barriers that exist include, but are not limited to, the following:

I.      There is no accessible route to the second and third floor dining areas due to steps.
*Defendants fail to provide that there is one accessible route connecting all the public accommodations within the site.  See 1991 ADA §§ 4.1.2(2); 4.1.3(1); and 4.3.2; 2010 ADA §§ 206.2.2 and 206.2.4; 1968 BC § 27-292.5; 1968 Ref Std § 4.3.2; 2008 BC § 1104.2; and the 2014 BC § 1104.2*

II.     There are steps to access the second and third floor dining areas that are greater than ½-inch in height.
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a ramp, elevator, or platform lift. See 1991 ADA § 4.3.8; and 1968 Ref Std § 4.3.8.*
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be ramped. See 2010 ADA § 303.4; 2008 Ref Std § 303.3; and 2014 Ref Std § 303.4.*

III.  There is no accessible seating at any of the dining areas at the ground floor dining room.

*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10.*

IV.  There are no accessible tables in the ground floor dining area. All tables designated as accessible have a pedestal that obstruct knee and toe clearances required for a forward approach to the seating.

*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10. Defendants fail to provide (due to chair and  table pedestals) a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; 2010 ADA § 902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § § 902.2; and 2014 Ref Std § 902.2.*

V.  There are no accessible tables in the ground floor dining area.  The booths have a step that obstruct knee and toe clearances required for a forward approach to the seating.

*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10. Defendants fail to provide (due to a step) a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; 2010 ADA § 902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § 902.2; and 2014 Ref Std § 902.2.*

VI.  There is no accessible seating at the bar. The bar counter exceeds 34 inches in height.

*Where food or drink is served at counters exceeding 34 inches in height for consumption by customers seated on stools or standing at the counter, a portion of the main counter which is 60 inches in length minimum shall be accessible or service shall be available at accessible tables within the same area. See 1991 ADA § 5.2.*
*Defendants fail to provide that where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall be accessible. See 2010 ADA § 226.1.*
*Defendants fail to provide that at least 5 percent of the seating and standing spaces are accessible. See 1968 BC § 27-292.10(a)(3); 2008 1109.11; and 2014 BC § 1109.10.*

VII.  Defendants fail to disperse accessible dining surfaces.

*Defendants fail to provide that accessible dining surfaces shall be dispersed throughout the space or facility containing dining surfaces. See*

*2008 BC 1109.11.1, and 2014 BC 1109.10.1.  See also 1991 ADA § 5.1 and 2010 ADA § 226.2.*

VIII.   The toilet room is not accessible.
*Defendants fail to provide accessible toilet facilities. See 1991 ADA § 4.1.3(11); 2010 ADA § 213.1; 1968 BC § 27-292.12; 2008 BC § 1109.2; and 2014 BC § 1109.2.*

IX.   The attempted accessible toilet compartments in the toilet room has a seat cover dispenser that is not within an accessible reach range.
*Defendants fail to provide operable parts within an accessible reach range. See 1991 ADA § 4.2.6; 2010 ADA § 308.3.1, 1968 Ref Std § 4.2.6; 2008 Ref Std § 308.3.1; and 2014 Ref Std § 308.3.1.*

X.   The water closet in the toilet room lacks compliant grab bars.
*Defendants fail to provide an accessible water closet with a vertical side wall grab bar. See 2008 Ref Std § 604.5.1; and 2014 Ref Std § 604.5.1.*

XI.   The door at the toilet room has hardware that requires twisting of the wrist (knob type hardware).
*Defendants fail to provide handles, pulls, latches, locks, and other operable parts that are operable with one hand and do not require tight grasping, pinching, or twisting of the wrist. See 1991 ADA § 4.13.9; 2010 ADA § 404.2.7; 1968 Ref Std § 4.13.9; 2008 Ref Std § 404.2.6; and 2014 Ref Std § 404.2.6.*

XII.   The lavatory in the toilet room lacks protected hot water and drain pipes.
*Defendants fail to provide accessible lavatories and/or sinks with water supply and drain pipes that are insulated or otherwise configured to protect against contact. See 1991 ADA §§ 4.19.4 and 4.24.6; 2010 ADA § 606.5; 1968 Ref Std § 4.19.4; 2008 Ref Std § 606.6; and 2014 Ref Std § 606.6.*

65.   Upon information and belief, a full inspection of the TGIF premises will reveal the existence of other barriers to access.

66.   As required by the ADA (remedial civil rights legislation) to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of the TGIF premises in order to catalogue and cure all of the areas of non-compliance with the ADA.  Notice is therefore given that Plaintiff intends on amending the Complaint to include any violations discovered during an inspection that are not contained in this Complaint.

67.     Within the past three years of filing this action, Plaintiff attempted to and desired to access the TGIF premises.

68.     Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

69.     Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws. Nor have Defendants made or provided accommodations or modifications to persons with disabilities.

70.     Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within the TGIF premises continue to exist and deter Plaintiff.

71.     Plaintiff frequently travels to the area where the TGIF premises is located.

72.     Plaintiff resides in the Chelsea neighborhood of New York County, in which the TGIF premises is located, approximately 10 minutes from the TGIF premises. On his way to the public transportation network provided on the 34th Street corridor in New York County, Plaintiff passes by the TGIF premises.

73.     Plaintiff enjoys dining out.

74.     In May 2021 Plaintiff patronized the TGIF premises and enjoyed the American cuisine and casual dining atmosphere it has to offer.

75.     Although Plaintiff enjoyed the food and atmosphere offered at the TGIF premises, he did not appreciate being treated like a second class citizen, being relegated to the first floor only of the TGIF premises and seeing non-disabled patrons being seated

promptly on the upper floors of the TGIF premises while Plaintiff had to wait for a table to become available on the first floor.

76.     Even on the first floor, Plaintiff's seating options were limited due to the inaccessible dining tables.

77.     Being forced to surmount barriers to wheelchair access to dine, deters Plaintiff from returning to the TGIF premises and enjoying its food.

78.     Being treated as inferior to other patrons based on disability by Defendants, mars Plaintiff's dining experience and deters him from returning.

79.     Plaintiff wants to dine again at the TGIF premises as he enjoyed the dishes it offers.

80.     Plaintiff intends to patronize the TGIF premises one or more times a year after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

81.     Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether the TGIF premises is fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

82.     Plaintiff intends to utilize his visits to the TGIF premises to monitor, ensure, and determine whether the TGIF premises is fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

## FIRST CAUSE OF ACTION
### (VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)

83.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

84.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

85.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

86.     Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can escape liability by transferring their obligations to the other by contract (i.e. lease agreement).  28 C.F.R. 36.201(b).

87.     Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is disabled.  Defendants' policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

88.     By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

89.     Defendants have discriminated against the Plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled Plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

90.     The TGIF premises are not fully accessible and fail to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

91.     Defendants failed to make alteration accessible to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2).

92.     The paths of travel to the altered primary function areas were not made accessible in violation of 28 C.F.R. § 36.403.

93.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make Defendants' place of public accommodation fully accessible.

94.     By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

95.     In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

96.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

97.     Defendants have and continue to discriminate against Plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

## SECOND CAUSE OF ACTION
## (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

98.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

99.     Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 292(21).

100.     In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". See Executive Law § 300 [effective date: August 12, 2019].

101.     By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

102.     Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because Plaintiff is disabled.

103.     Defendants discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public

accommodation.  Each of the Defendants have aided and abetted others in committing disability discrimination.

104.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

105.    In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of NYSHRL (Executive Law § 296(2)(c)(v)).

106.    It would be readily achievable to make Defendants' place of public accommodation fully accessible.

107.    It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

108.    As a direct and proximate result of Defendants' unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

109.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)**

110.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

111.    Plaintiff suffers from various medical conditions that separately and together, impair Plaintiff's bodily systems - in particular, the life activity of both walking

and body motion range -and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102).

112.    The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the NYCHRL.  The Restoration Act confirmed the legislative intent to abolish "parallelism" between the NYCHRL and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 of the NYCHRL (emphasis added). The Restoration Act is to be construed broadly in favor of Plaintiff to the fullest extent possible.  See also New York City Local Law 35 of 2016.

113.    Defendants have and continue to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the Plaintiff the full and equal enjoyment, on equal terms and conditions, of the accommodations, advantages, services, facilities, and privileges of their place of public accommodation all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).  Each of the Defendants have aided and abetted others in committing disability discrimination.

114.    Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the ADA as alleged herein.

115.     Defendants have discriminated, and continue to discriminate, against Plaintiff in violation of the NYCHRL (Administrative Code § 8-107(4)) by designing, creating and/or maintaining an inaccessible commercial facility/space.

116.     Defendants have subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying Plaintiff the full and equal enjoyment, on equal terms and conditions, of the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

117.     Defendants' policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space is a discriminatory practice in violation of NYCHRL (Administrative Code § 8-107 (4)).

118.     In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

119.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, DLR Properties, LLC continuously controlled, managed, and operated the public sidewalk abutting 211 West 34th Street, which includes the portion of the sidewalk constituting the entrance to Defendants' place of public accommodation.

120.    DLR Properties, LLC's failure to construct and maintain an accessible entrance from the public sidewalk to Defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

121.    Defendants discriminated against Plaintiff in violation of the NYCHRL (Administrative Code, § 8-107(4)) by maintaining and/or creating an inaccessible public accommodation.

122.    Defendants' conduct also violates the NYCHRL, Administrative Code 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . . [when plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

123.    Because Defendants' public accommodation is not readily accessible and usable by people with disabilities, Defendants have demonstrated a policy or practice that has a disproportionately negative impact on the disabled (including Plaintiff).

124.    Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL. Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law. In particular, Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' public accommodation.

125.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, and embarrassment.

126.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

127.    By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

128.    Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

129.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

130.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

131.    Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

132.    Defendants discriminated against Plaintiff pursuant to New York State Executive Law.

133.    Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by Civil Rights Law §§ 40-c and 40-d for each and every violation.

134.    Notice of this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

## INJUNCTIVE RELIEF

135.    Plaintiff will continue to experience unlawful discrimination as a result of Defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order Defendants to alter and modify their place of public accommodation and their operations, policies, practices, and procedures.

136.    Injunctive relief is also necessary to make Defendants' facilities readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

137.    Injunctive relief is further necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, NYSHRL, and the NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, the NYSHRL, and the NYCHRL and declaring

the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants'

policies, practices, and procedures;

      B.   Issue a permanent injunction ordering **Defendants to close and cease all**

**business** until Defendants remove all architectural barriers and violations of the ADA,

the 1991 Standards or the 2010 Standards, the NYSHRL, and the NYCHRL, including

but not limited to the violations set forth above;

      C.   Retain jurisdiction over the Defendants until the Court is satisfied that the

Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

      D.   Award Plaintiff compensatory damages as a result of Defendants'

violations of the NYSHRL and the NYCHRL;

      E.   Award Plaintiff punitive damages in order to punish and deter the

Defendants for their violations of the NYCHRL;

      F.   Award Plaintiff the monetary penalties for each and every violation of the

law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

      G.   Find that Plaintiff is a prevailing party and award reasonable attorney's

fees, costs, and expenses pursuant to the NYSHRL and NYCHRL;

      H.   Find that Plaintiff is a prevailing party and award reasonable attorney's

fees, costs, and expenses pursuant to the ADA; and

      I.   For such other and further relief, at law or in equity, to which Plaintiff

may be justly entitled.

Dated: January 27, 2023
      New York, New York

                          Respectfully submitted,

                         **PARKER HANSKI LLC**

By:____/s_____
Robert G. Hanski, Esq.
Attorneys for Plaintiff
40 Worth Street, Suite 602
New York, New York 10013
Telephone: (212) 248-7400
Facsimile: (212) 248-5600
Email: rgh@parkerhanski.com